IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFF ALLEN<br>519 North Hyde Park Ave<br>Scranton, PA 18504<br><br>        Plaintiff,<br><br>      v.<br><br>SOLID WASTE SERVICES, INC.<br>d/b/a JP MASCARO & SONS<br>2650 Audubon Rd<br>Audubon, PA 19403<br><br>        Defendant. | CIVIL ACTION NO.:<br><br>**CIVIL ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff Jeff Allen (hereinafter "Plaintiff"), by and through undersigned counsel, hereby complains as follows against Defendant Sold Waste Services, Inc. d/b/a J.P. Mascaro & Sons (hereinafter "Defendant").

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Defendant of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. (hereinafter "ADA"), and the Pennsylvania Human Rights Act, 43 Pa. Cons. Stat Ann. §§ 951-963 (hereinafter "PHRA"). Defendant fired Plaintiff due to a perceived disability, in violation of the ADA and PHRA.

**PARTIES**

2. Plaintiff is an adult individual residing at the address set forth in the caption.

3. Defendant is an entity that does business in Pennsylvania with a principal business address as set forth in the caption.

1

4. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with Defendant.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under the laws of the United States, the ADA.

6. This Court may properly maintain supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

7. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this Commonwealth and judicial District are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

8. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because Defendant resides in and/or conducts business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to this action took place within this judicial district.

9. Plaintiff has exhausted all administrative prerequisites to the filing of her ADA claim. Plaintiff has filed this action within 90 days of her receipt of a "Right to Sue" notice from the EEOC.

## FACTUAL BACKGROUND

10. On or about June 10, 2024, Defendant hired Plaintiff as a Commercial Truck Driver.

11. Plaintiff worked continuously from June 10, 2024 through October 5, 2024.

12. Plaintiff was not scheduled to work on October 6, 2024.

13. On or about October 7, 2024, Plaintiff notified his manager that he was ill with rhinovirus symptoms, and that he was unable to report to work due to same.

14. Plaintiff sought medical attention at the local urgent care for his symptoms, and was diagnosed with a rhinovirus infection.

15. Plaintiff provided his supervisor with a copy of his discharge paperwork indicating that he remain out of work until October 9, 2024 due to illness.

16. The discharge paperwork indicated Plaintiff was "ok to return soon as feeling better and 24 hours without a fever/chills."

17. Plaintiff provided Defendant with a copy of the aforementioned physician's note and advised that he would update Defendant when he was ready to return to work.

18. Unfortunately, Plaintiff's condition did not improve prior to October 9, 2024 and he required an ongoing leave of absence.

19. At all times relevant hereto, Plaintiff remained in contact with his dispatch supervisor, and Defendant's Human Resources officer, regarding his ongoing need for a leave of absence from work due to illness.

20. In response, Defendant advised Plaintiff that his request for ongoing leave was approved.

21. On October 14, 2024, due to a worsening of his condition, Plaintiff sought follow up medical attention and was admitted to Geisinger Community Medical Center.

22. On October 15, 2024, Plaintiff was discharged from hospitalization.

23. Plaintiff's discharge paperwork indicated that he was diagnosed with "rhinovirus infection and excess fluid in lungs."

24. Plaintiff's discharge paperwork further indicated cardiology was consulted during the course of his admission, and instructed that he follow up with a cardiologist.

25. At the time of discharge, Plaintiff was provided with a note clearing him to return to work on October 19, 2024, without restriction.

26. Plaintiff provided his discharge paperwork and doctor's note clearing him to return to work to his supervisor.

27. Defendant advised Plaintiff that it could not accept the discharge note, and required he provide a note from his treating physician before returning to work.

28. Plaintiff questioned Defendant's instruction given that he provided a note clearing him to return to work on October 19, 2024 without restriction.

29. Nonetheless, in compliance with the directive of Defendant, Plaintiff made an appointment with his treating physician on October 23, 2024.

30. On October 23, 2024, Plaintiff provided a note identifying that he may return to work without restriction.

31. Defendant refused to accept Plaintiff's note and return him to work.

32. Defendant cited "concerns" about Plaintiff's health as the reason it refused to return Plaintiff to work.

33. Accordingly, on October 28, 2024, Plaintiff sought a follow up medical appointment with his treating physician.

34. On October 28, 2024, Plaintiff provided Defendant with a note identifying that Plaintiff was "assessed and found to be able to return to work on 10/28/2024 without restriction."

35. Defendant refused to return Plaintiff to work.

36. Rather, on October 31, 2024, Defendant fired Plaintiff.

37. Defendant again cited concerns about Plaintiff's medical condition as the reason for its termination.

38. Plaintiff was ready, willing and able to return to work at the time of his termination.

39. At no time prior to his termination did Defendant seek an examination and/or assessment of Plaintiff by a third party medical provider.

40. Rather, Defendant fired Plaintiff because it improperly perceived Plaintiff was disabled, despite Plaintiff providing medical documentation identifying he was able to return to work without restriction.

41. On or about January 14, 2025, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") which was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

42. On or about September 23, 2025, after a full investigation of Plaintiff's claims, the EEOC issued a determination asserting "there is reasonable cause to believe that the [Defendant] violated the ADA when it subjected [Plaintiff] to an overly broad medical inquiry and discharged him."

43. On or about February 11, 2026, the EEOC issued a Notice of Right to Sue.

44. As a result of the foregoing, Plaintiff has suffered damages.

## COUNT I
### Violations of the ADA
**(Perceived Disability Discrimination)**

45. The foregoing paragraphs are incorporated herein as if set forth in full.

46. At all relevant times, Plaintiff was an "employee" within the meaning of the ADA.

47. At all relevant times, Defendant is an "employer" within the meaning of the ADA.

48. At all relevant times, Defendant perceived Plaintiff to be disabled within the

meaning of the ADA.

49. Defendant fired Plaintiff because Defendant perceived Plaintiff as being disabled.

50. Defendant's conduct as described above constitute violations of the ADA and have caused Plaintiff damages.

## COUNT II
### Violations of the PHRA
**(Perceived Disability Discrimination)**

51. The foregoing paragraphs are incorporated herein as if set forth in full.

52. At all times relevant hereto, Defendant was an "employer" within the meaning of the PHRA.

53. At all times relevant hereto, Plaintiff was an "employee" within the meaning of the PHRA.

54. Defendant discriminated against Plaintiff by firing him because it perceived him as an individual with a Disability.

55. Defendant's conduct as described above constitute violations of the PHRA and have cause Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating against employees based on their disabilities, failing to accommodate employees with disabilities, and failing to engage in the interactive process with employees with disabilities;

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

6

Defendant's illegal actions as described above, including but not limited to past lost earnings and future lost earnings;

B. Plaintiff is to be awarded liquidated damages and punitive damages (as permitted by applicable law) in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be awarded actual damages as well as damages for emotional distress and/or pain and suffering (as permitted by applicable law) and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law.

E. Plaintiff is permitted to have a trial by jury.

> Respectfully submitted,
>
> **SWARTZ SWIDLER, LLC**
>
> */s/ Manali Arora*
> Manali Arora, Esq.
> 9 Tanner Street, Suite 101
> Haddonfield NJ 08034
> (856) 685-7420 Phone
> (856) 685-7417 Fax